IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Lynn James,                                             Case No. 3:22-cv-01781-JGC

        Plaintiff,

      v.                                                    **ORDER**

Thompson/Center Arms, Inc.,

        Defendant.


This is a personal injury case. Plaintiff Lynn James was injured while using a rifle purchased from Defendant Thompson/Center Arms, Inc. Currently before me is Defendant's Motion to Preclude Plaintiff's Expert Ryan Spence. (Doc. 17).

## **Background**

In approximately 2003, Plaintiff purchased a rifle designed and manufactured by Defendant. (Doc. 17-1, at 21:2–7). He purchased a new barrel for this rifle in 2017, also designed and manufactured by Defendant. (Doc. 17-3, pgID 239–40).

The barrels for this rifle are interchangeable; a user can detach one rifle barrel and attach another in its place. This allows a user to fire ammunition of different calibers with the same rifle body. The barrel is held in place and attached to the rest of the rifle by a "rear forearm screw." (Doc. 1-1, pgID 12). The forearm screw inserts into a set screw hole that is drilled into the barrel. (*Id.*).

Defendant drills the screw hole into the barrel during the manufacturing process. (Doc. 18, pgID 22:23–25:8). A computer-assisted machine drills the screw hole to a depth and diameter specified in its programming. (*Id.*). At the end of the manufacturing process, Defendant inspects

the barrels visually as well as by using machine gauges to check the barrel's specifications, such as the depth and dimensions of the screw holes. (*Id.* at 32:3–33:6, 52:8–15). After Defendant completes the visual and measurement inspection, it test-fires the barrel with live ammunition before preparing it for shipment and sale. (*Id.* at 33:1–6).

Plaintiff used and fired the rifle barrel on several occasions after purchasing it. Plaintiff estimates that he fired 30 rounds through the barrel without incident over a four-year period. (Doc. 17-1, at 30:15–31:23).

On October 9, 2021, Plaintiff was at a property in Waverly, Ohio for "rifle sighting." (Doc. 17-3, pgID 239). Rifle sighting is a process used to calibrate the rifle sight to hit targets at a specified range. The user fires live rounds at a bullseye, and based on the results, adjusts the rifle sight to improve its accuracy.

Plaintiff fired two rounds while sighting his rifle. He fired the first round with no problems. (*Id.*). Upon firing the second round, the rifle barrel ruptured. (*Id.*). This rupture ejected the forearm screw from the rifle barrel, and the screw pierced through and embedded in Plaintiff's left hand, causing injuries. (*Id.*).

Plaintiff sued for personal injury and product liability in the Lucas County Court of Common Pleas. (Doc.1-1). Defendant removed to federal court under 28 U.S.C. § 1441(b). (Doc. 1).

During the course of this litigation, Plaintiff disclosed Ryan Spence as an expert witness from whom Plaintiff intended to elicit opinion testimony. The entirety of Mr. Spence's opinions and their bases are contained in a one paragraph email:

Inspection report:
Spence Gunsmithing has completed its inspection of Thompson/Center rifle serial number 156647[.] Upon inspection[,] it was discovered the cause of this weapons failure was due to the rear forearm screw hole being drilled all the way through

2

the barrel. The hole as seen in the picture was very obviously tapped its entire depth[,] meaning this whole must have been "through drilled" or [in other] words drilled all the way through prior to being tapped. This is a very obvious manufacturing mistake as it is industry standard to drill no more than 2/3 the thickness of the barrel when drilling and tapping barrels. There were no other defects to the barrel or signs of mistempering. The problem was compounded by the fact that they drove all the way through and one of their highest pressure chamberings the 460 S&W. The ammo was disassembled and inspected for correct charge [weight]. In addition to drilling all the way through[,] they did so at the very rear of the barrel where chamber pressures will be the highest. We believe this mistake could have been very easily avoided[.] In our opinion this is the only cause of failure for this rifle. We have included pictures showing there are tap marks all the way through.

If you have any questions please call or email us.

: also what we shipped out

1 case

2 receiver with attached stock

3 ammo as Included minus one round for testing

4 rear takedown screw

5 forearm

6 barrel

(Doc. 17-5) (cleaned up). The email attached four photographs. (*Id.*). Three of those photographs appear to show a hole in the barrel of a gun, but the report gives no explanation of what it is or how the photographs relate to the report's conclusions. (*Id.*). Mr. Spence did not provide a resume, curriculum vitae, or any other summary of his qualifications, experience, and background. Plaintiff produced a copy of Mr. Spence's diploma from the gunsmithing school Mr. Spence attended. (Doc. 17-6, at 36:4–21).

Following his disclosure as an expert witness, Mr. Spence gave a deposition. (*See* Doc. 17-6). Defendant now moves to exclude Mr. Spence and his opinions. (Doc. 17).

3

## Discussion

Federal Rule of Evidence 702 governs the admissibility of expert witnesses and their testimony. The Rule lays out a four-factor test. A witness may provide expert opinion testimony if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 (1993); *United States v. Davis*, 970 F.3d 650, 660 (6th Cir. 2020) ("Federal Rule of Evidence 702 codifies [the *Daubert*] standards, imposing four requirements that likewise seek to ensure that scientific testimony is both relevant and reliable.") (internal quotation marks omitted).

This is a flexible standard, however, and "[t]he focus . . . must be solely on principles and methodology, not on the conclusions they generate." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 138 (1999) ("The *Daubert* factors do *not* constitute a definitive checklist or test, and the gatekeeping inquiry must be tied to the particular facts.") (internal citation omitted). Courts in this Circuit thus focus on the two "key handholds" of Rule 702: "To be admissible, any relevant scientific or technical evidence [1] must be the 'product of reliable principles and methods' and [2] must have been 'reliably applied' in the case." *United States v. Gissantaner*, 990 F.3d 457, 463 (6th Cir. 2021). "That is what matters most." *Id.*

This is not merely a question of weight, to be decided by a jury. The expert's proponent bears the burden of demonstrating to *me*, by a preponderance of the evidence, "the sufficiency of

4

an expert's basis[] and the application of the expert's methodology." Fed. R. Evid. 702 advisory committee's note to 2023 amendment; *see Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 261 (6th Cir. 2001) ("It is the proponent of the testimony that must establish its admissibility by a preponderance of proof").

Defendant argues that Plaintiff's expert Ryan Spence does not pass muster under Rule 702 and should be excluded from testifying. I agree. Significantly, Mr. Spence's report does not provide the key handholds of Rule 702. His report is a summary of his conclusions; it does not show how Mr. Spence arrived at them.

In his first conclusion, Mr. Spence writes that "the cause of this weapons failure was due to the rear forearm screw hole being drilled all the way through the barrel." (Doc. 19-1). Mr. Spence does not describe the methods he employed to arrive at this opinion. He took notes during his investigation, but he did not preserve them. (Doc. 17-6, at 24:20–25:17).

However, it is clear from his testimony what Mr. Spence did *not* do: he did not examine a comparable exemplar barrel (*id.* at 101:15–23); did not perform any modeling or casting (*id.* at 114:15–25); did not perform any magnetized testing (*id.* at 87:5–19); and did not take any x-ray or other images of the barrel (*id.*). Mr. Spence's report also contained no measurements or other analysis. (*Id.* at 33:17–24). It does not explain in any way what his inspection method entailed.

In his second conclusion, Mr. Spence opines that the screw hole "is a very obvious manufacturing mistake as it is industry standard to drill no more than 2/3 the thickness of the barrel when drilling and tapping barrels." (Doc. 19-1). But Mr. Spence does not offer any comparison to establish what that industry standard is. He does not explain why the claimed manufacturing mistake was obvious, and he does not explain how or why such a mistake would evade Defendant's product testing. Mr. Spence never investigated or considered Defendant's

testing during the manufacturing process to determine whether it was flawed. (Doc. 17-6, at 65:7–11; 71:9–12). Mr. Spence did not investigate and does not know Defendant's manufacturing process for the subject barrel. (*id.* at 60:17–23).

In his third conclusion, Mr. Spence writes that Defendants drilled "at the very rear of the barrel where chamber pressures will be the highest. We believe this mistake could have been very easily avoided[.] In our opinion this is the only cause of failure for this rifle." (Doc. 19-1). Mr. Spence does not explain his methodology for his conclusion that his identified defect was the "only cause of failure."

In fact, he recognizes that the barrel failure could have been caused by many other factors. He testified that the barrel failure may have been due to a user loosening the forearm screw (Doc. 17-6, at 117:2–13); an obstruction in the barrel (*id.* at 135:13–17); using an aftermarket screw made of a different material (*id.* at 135:18–21); using over-pressurized ammunition (*id.* at 135:25–136:21); or making post-production alterations to the barrel that change its specifications (*id.* at 140:16–141:20).

Simply put, none of Mr. Spence's opinions are supported by "reliable principles and methods." *Gissantaner, supra*, 990 F.3d at 463. As he has not given me the first key handhold, there is no way for me to reach the second. I cannot conclude, without reliable principles and methods in the first instance, that Mr. Spence reliably applied any such principle or method in the second. *See id.*

I therefore find that Plaintiff has not established, by a preponderance of the evidence, the admissibility of Mr. Spence and his opinions under Federal Rule of Evidence 702.

## **Conclusion**

Mr. Spence' inspection lasted about two hours. (Doc. 17-6, at 12:6–9). He concluded that Defendants were responsible for the barrel's misfire and Plaintiff's ensuing injuries. Mr. Spence asks the factfinder to conclude likewise, with nothing more than his say-so. That is not enough to pass through the gates of Rule 702. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires [me] to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Accordingly, it is hereby ORDERED THAT: Defendant's motion to preclude the testimony of Plaintiff's expert Ryan Spence (Doc. 17) be, and the same hereby is, granted.

SO ORDERED.

*/s/ James G. Carr*
Sr. U.S. District Judge